GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (SBN 134180)
Marc L. Godino (SBN 182689)
Danielle L. Manning (SBN 313272)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: mgodino@glancylaw.com
Email: dmanning@glancylaw.com

GREENSTONE LAW APC
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
Email: mgreenstone@greenstonelaw.com

*Attorneys for Plaintiffs*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| NATASHA PEGUERO and ZULEMA CHAPA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, USA, INC., a California corporation, TOYOTA MOTOR NORTH AMERICA, INC., a California corporation, and TOYOTA MOTOR CORPORATION, a Japanese corporation,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violations of New York's General Business Law ("GBL") §§ 349, 350, *et seq;*<br><br>(2) Breach of the Implied Warranty of Merchantability, N.Y. U.C.C. § 2-314;<br><br>(3) Breach of Implied Warranty of Merchantability, Tex. Bus. & Com. Code § 2.314;<br><br>(4) Breach of implied warranties pursuant to the Magnuson Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*);<br><br>(5) Fraudulent Omission; and<br><br>(6) Unjust Enrichment. |

# I.  **INTRODUCTION**

1.     Plaintiffs Natasha Peguero and Zulema Chapa ("Plaintiffs") bring this action individually and on behalf of all similarly situated persons in the United States ("Class Members") who purchased or leased a 2018-2020 Toyota Rav4 ("Class Vehicles") that was designed, manufactured, distributed, marketed, sold, and leased by Defendants Toyota Motor Sales, USA, Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation ("Defendants" or "Toyota"). Plaintiffs allege as follows upon personal knowledge as to themselves and their experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2.     Beginning in 2018, if not before, Defendants knew that the Class Vehicles contain one or more defects that cause, among other things, rough or delayed shifting, significantly delayed acceleration, hesitation, loss of power, and/or jerking ("Transmission Defect").

3.     The Transmission Defect has been documented to occur without warning during vehicle operation and poses an extreme and unreasonable safety hazard to drivers, passengers, and pedestrians.  Numerous Class Vehicle owners have reported a significant delay in the Class Vehicles' response while attempting to accelerate from a stop and/or while cruising in situations that require the ability to accelerate rapidly (*e.g.*, merging on to the highway, changing lanes, etc.).  Other Class Vehicle owners have reported jerking, shaking, lurching, hesitation, and/or engine revving associated with delayed acceleration.   One vehicle owner complained to the National Highway Traffic Safety Administration ("NHTSA") as follows (NHTSA ID No. 11054484):[1]

---

[1]  Spelling and grammatical errors in consumer complaints reproduced herein remain as found in the original.

CLASS ACTION COMPLAINT

FROM A DEAD STOP WHEN ACCELERATING THE VEHICLE WILL NOT SPEED UP IT ACTS LIKE ITS IN 6TH GEAR. TO GAIN CONTROL I NEED TO PUSH THE ACCELERATOR TO THE FLOOR & THEN IT SPEEDS UP ALMOST UNCONTROLLABLY. THIS HAPPEN AT 12 TIMES. SEE MY COMMENT BELOW THAT I SENT TO TOYOTA CORPORATE OFFICE.

**I HAVE WANT I CONSIDER A SEVERE SAFETY ISSUE WITH MY 2018 RAV4** ([XXX]). UPON ACCELERATING FROM A STOP THE VEHICLE WILL NOT SPEEDUP IT ACTS LIKE IT IS IN 6TH GEAR TO GET IT GOING I HAVE PUT THE GAS PEDAL TO THE FLOOR AN THEN IT SOMETIME SHOOTS AHEAD ALMOST HITTING A VEHICLE IN FRONT OF ME. RECENTLY IT HAPPENED 3 TIMES IN A ROW TWICE I GOT IT TO RECOVER BUT THE THIRD TIME I NEEDED TO PULL OF THE HIGHWAY & RESTART THE ENGINE. THIS HAS HAPPEN AT LEAST 10 TIMES. PHILLIPS TOYOTA SERVICE SAID IT IS A FLY BY WIRE PROBLEM (COMPUTER CONTROLLED). MY FIRST VISIT PHILLIPS DID NOT EVEN WRITE A SERVICE REQUEST ON THE SECOND VISIT THEY DID, BUT ON 12/04/2017 THEY DID NOT AGAIN. **THIS GOING TO CAUSE EITHER A REAR END OR FRONT ACCIDENT**. WHEN ACCIDENTS HAPPEN LITIGATION USUALLY FOLLOWS. LETS GET THIS FIXED. PHILLIP TOYOTA SAID OTHER OWNERS HAVE HAD THIS SAME CONCERN. 12/04/201

(emphasis supplied).

4.     Plaintiffs are informed and believe, and based thereon allege, that Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of sale or lease and thereafter.  Defendants have actively concealed the true nature and extent of the Transmission Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.   Had Plaintiffs and prospective Class Members known about the Transmission Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them.

CLASS ACTION COMPLAINT

5.    Plaintiffs are informed and believe, and based thereon allege, that despite notice of the Transmission Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Transmission Defect.

6.    Toyota knew of and concealed the Transmission Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale and repair and thereafter.  As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicle.

7.    On information and belief, in an effort to conceal the Transmission Defect, Toyota has instructed dealers to tell consumers their vehicles are "operating normally" or "operating as intended" when they are not, or to give excuses for sub-par performance.  This is a common practice in the automotive industry, particularly with transmission-related issues.  By denying the existence of a defect manufacturers can play on the consumers' lack of technical expertise and avoid implementing potentially costly fixes for years, or at least until the vehicles are out of warranty.  When remedial measures are taken, they are often through the issuance of service bulletins provided to dealers only that are narrowly crafted and under inclusive.

## II.    PARTIES

### A.    Plaintiffs

**1.    Natasha Peguero – New York**

8.      Natasha Peguero is a resident of Redding, Pennsylvania.  In or about October of 2019, Ms. Peguero purchased a certified pre-owned 2019 Toyota RAV4 from Hillside Toyota in Jamaica, New York.  Prior to purchasing the vehicle, Ms. Peguero spoke with the dealer sales representative about the vehicle, inspected the "Monroney" sticker posted on the side of the vehicle and test drove the vehicle.  Ms. Peguero was never informed by the dealer sales representative that the vehicle suffered from the Transmission Defect and relied upon this fact in purchasing the vehicle.  Had Ms. Peguero been informed that her vehicle suffered from the Transmission Defect, she would not have purchased it.  Ms. Peguero acquired her vehicle for personal, family or household purposes.  Ms. Peguero's vehicle was designed, manufactured, distributed, advertised, marketed, sold and warranted by Defendants.

9.      Within weeks of purchasing her vehicle, Ms. Peguero experienced problems with hesitation when attempting when attempting to accelerate, including when accelerating to pick up speed while cruising, when accelerating from a complete stop and when accelerating from a rolling stop.

10.     Ms. Peguero called the dealer to complain of the problems she was experiencing and the dealer claimed that she was not used to the way the car drove and did not offer any remedy.  Ms. Peguero then called Toyota to ask if she could exchange the vehicle and was told that she needed to speak to the dealer.  Ms. Peguero called the dealer a second time but was not offered any remedy.  In sum, Ms. Peguero was run in circles and not offered any legitimate relief, and her vehicle continues to suffer from the Transmission Defect today.

11.     At all times, Ms. Peguero has driven her vehicle in a foreseeable manner in the sense that she has not abused her vehicle or used it for purposes unintended by Toyota such as drag racing, for example.  However, despite her normal and foreseeable driving, the Transmission Defect has rendered her vehicle unsafe and unfit to be used as intended.

### 2.    Zulema Chapa - Texas

12.    Zulema Chapa is a resident of Alice, Texas.  In or about April of 2020, Ms. Chapa purchased a 2019 Toyota RAV4 from Mike Shaw Toyota in Robstown, Texas.  Prior to purchasing the vehicle, Ms. Chapa researched the vehicle online including on the Toyota website, spoke with the dealer sales representative about the vehicle, and inspected the "Monroney" sticker posted on the side of the vehicle.  Ms. Chapa was never informed by the dealer sales representative that the vehicle suffered from the Transmission Defect and relied upon this fact in purchasing the vehicle.  Had Ms. Chapa been informed that her vehicle suffered from the Transmission Defect, she would not have purchased it.  Ms. Chapa acquired her vehicle for personal, family or household purposes.  Ms. Chapa's vehicle was designed, manufactured, distributed, advertised, marketed, sold and warranted by Defendants.

13.    Shortly after purchasing her vehicle, Ms. Chapa began to experience problems with hesitation followed by a sudden lurching or jolting when attempting to accelerate at low speeds and out of a rolling stop.  Ms. Chapa took her vehicle in to Mike Shaw Toyota complaining of the problems she was having.  The dealer told her it was not aware of such problems with her vehicle and could not replicate the problems she experienced.  Ms. Chapa's vehicle continues to experience the Transmission Defect.

14.    At all times, Ms. Chapa has driven her vehicle in a foreseeable manner in the sense that Ms. Chapa has not abused her vehicle or used it for purposes unintended by Toyota such as drag racing, for example.  However, despite her normal and foreseeable driving, the Transmission Defect has rendered his vehicle unsafe and unfit to be used as intended

### B.    Defendants

15.    Defendant, Toyota Motor Sales, USA, Inc. is a California corporation with its principal place of business located at 6565 Headquarters Dr, Plano, Texas

75024 and doing business in California and throughout the United States.

16.   Defendant Toyota Motor North America, Inc. ("TMNA"), is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. TMNA is headquartered at 6565 Headquarters Dr, Plano, TX 75024. According to Toyota's official website, TMNA "brings together Toyota's marketing, sales, engineering and manufacturing arms in North America on one shared, state-of-the-art campus."

17.   Founded in 1937 and headquartered in Toyota City, Japan, Defendant Toyota Motor Corporation ("TMC") is a corporation organized under the laws of Japan. TMC manufactures and distributes automobiles and is the parent company.

18.   On information and belief, Defendants are responsible for the design, manufacture, distribution, marketing, sale and lease of the Class Vehicles.

19.   Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

## III.   JURISDICTION

20.   This is a class action.

21.   This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual Class Members exceed the sum value of $5,000,000, exclusive of interest and costs. There are more than 100 Class Members. At least one Class Member is a citizen of a different state than the Defendant.

22.    This Court has personal jurisdiction over Defendants at least one of them is a California corporation registered to conduct business in California, and/or they all have sufficient minimum contacts with California, and otherwise intentionally avail themselves of the markets within California, through the promotion, sale, marketing and distribution of its vehicles in California, so as to render the exercise of jurisdiction by this Court proper and necessary.

**IV.    VENUE**

23.    Toyota, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate. Toyota is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

**V.    FACTUAL ALLEGATIONS**

    **A.    Background**

24.    Upon information and belief, Toyota has sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles in California and throughout the United States.

25.    Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Toyota and its dealerships; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealerships are Defendant's agents for sales and repairs. The dealers were not intended to be the ultimate consumers of the Class Vehicles, and the warranty agreements were designed for and intended to benefit the ultimate consumers only.

26.    The Class Vehicles are equipped with Toyota's Direct Shift-8AT, a transverse, eight-speed transmission.

27.    In 2016, Toyota touted the Direct Shift-8AT transmission as a new technology that would provide customers with "quick and smooth response to accelerator pedal operation" which would "create[] an 'as desired' direct driving

feel..["2] In practice, however, Toyota's Direct Shift-8AT Transmission is plagued by numerous problems and safety concerns.

28.    On information and belief, in response to heightened consumer demand and governmental pressure to reach unprecedented miles-per-gallon ratings, Toyota attempted to create an 8-speed transmission for a compact, transverse application by using a single axis and only two planetary gears, rather than the typical four. Unfortunately, while Toyota touted the resulting Direct Shift 8AT transmission as "achieving one of the world's best transmission efficiencies" that "lower[] a vehicle's fuel requirements" and even improving "straight driving" and "cornering stability,"[3] in practice, the new transmission design causes harsh and delayed shifting, delayed and unpredictable and unintended acceleration, jerking, lurching forward, lack of power, and other symptoms listed *supra*.

29.    The Transmission Defect causes significantly delayed acceleration, hesitation especially when coming out of a turn or from a rolling stop, loss of power, and/or jerking during the Class Vehicles' operation. The Transmission Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers because of its impact on the Class Vehicles' drivability.

30.    The same or substantially similar transmission is also installed in a number of Toyota's other vehicles including the 2017-2019 Toyota Highlander, 2017-2019 Toyota Sienna and 2018-2019 Toyota Camry.

31.    To understand the Transmission Defect, it is necessary to understand how the Class Vehicles' transmission functions.

32.    The Class Vehicles' 8-speed direct shift automatic transmission has a hydraulic pump that develops high fluid pressure which is regulated by a pressure relief valve. The valve body, which is electronically controlled by the

---

[2] *Available at* https://global.toyota/en/powertrain/transmission/

[3] *Id.*

Powertrain Control Module ("PCM"), applies this pressure by activating solenoids at precise times to open hydraulic valves inside the valve body at varying pressure ramp-up rates to get smooth shifting according to the driver's inputs and the selected mode of transmission performance, like ECO, Normal or Sport modes. When the PCM is not calibrated correctly, the timing of the pressure applied to engage the clutch packs of the various gears will not be correct. On information and belief, this causes the symptoms of "shift shock" and delays before engagement of gears, as well as other symptoms of the Transmission Defect experienced by RAV4 owners.

**B.    Toyota's Pre-Sale Knowledge of the Transmission Defect**

33.    Plaintiffs are informed and believe, and based thereon allege, that Toyota became aware of the Transmission Defect in 2018 or earlier through sources not available to Plaintiffs and Class Members, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Toyota's network of dealers and directly to Toyota, aggregate warranty data compiled from Toyota's network of dealers, testing conducted by Toyota in response to consumer complaints, and repair order and parts data received by Toyota from Toyota's network of dealers.

34.    During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles which would necessarily have taken place prior to the sale of the Class Vehicles, Toyota, directly and/or through its agents or affiliated companies in the supply chain, necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicles' transmission, including, but not limited to: performance under various operating conditions (*e.g.*, shift quality, acceleration and deceleration response, etc.); the basic engineering principles behind the transmission design; the forces and stresses the transmission would face; when and how the transmission would experience

performance problems or fail; and, the cumulative and specific impacts on the transmission caused by wear and use, the passage of time, driver habits, environmental factors, etc.

35.   An adequate pre-release analysis of the design, manufacturing, engineering and testing of the transmission used for the Class Vehicles would have revealed to Toyota that the Class Vehicles' transmission does not operate properly and is not fit for its intended use. Thus, during the pre-release design stage of the Class Vehicles, Toyota would have known that the transmission in the Class Vehicles was defective and would pose a safety risk to owners/lessees and the motoring public.

36.   Upon information and belief, Toyota also would have known about the Transmission Defect because of the higher than expected number of warranty repairs attempted and replacement components ordered from Toyota, which should have alerted Toyota that the transmission was defective.  Upon information and belief, Toyota service centers use Toyota replacement parts that they order directly from Toyota, and all warranty repair attempts are logged into a centralized database to which Toyota has access.  Therefore, Toyota would have detailed and accurate data regarding the number and frequency of replacement part orders and warranty repair attempts.  The ongoing high number of warranty repair attempts and sales of replacement parts was known to Toyota, and would have alerted Toyota that its transmissions were defective and posed a safety risk early on.

37.   Upon information and belief, Toyota also knew about the Transmission Defect because numerous consumer complaints regarding transmission problems were made directly to Toyota.  The large number of complaints, and the consistency of their descriptions of transmission problems alerted Toyota to this serious Defect affecting the Class Vehicles.  The full universe of complaints made directly to Toyota about the Transmission Defect is information presently in the exclusive possession, custody and control of Toyota

and is not yet available to Plaintiffs prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to Toyota and Toyota dealerships and service centers about the repeated transmission problems their vehicles experienced.

38. The troubled history of Toyota's 8-speed direct shift transmission and Technical Service Bulletins ("TSBs") quietly issued by Toyota to its dealers evidence its pre-sale knowledge of the Transmission Defect as well as the continuing nature of the problem.

### 1. The Rav4 TSB

39. On August 15, 2019, Toyota issued TSB T-SB-0107-19 for the 2019 Rav4, a copy of which is attached hereto as **Exhibit 1.** This TSB titled "Hesitation on Acceleration from Slow Roll or Rolling Stop" explained that:

> Some 2019 model year Rav4 vehicles may exhibit hesitation on acceleration from a slow roll or rolling stop under all of the following conditions:
>
> • 6 mph or below
>
> • Immediately following a 3-1 downshift
>
> • Less than 40% accelerator pedal application

40. The TSB proscribed an update to the Powertrain Control Module (PCM) calibration, which on information and belief was performed on Ms. Peguero's vehicle and Ms. Chapa's vehicle prior to purchase, but failed to resolve the Transmission Defect. As a result, Class Vehicle owners like Ms. Peguero and Ms. Chapa continue to experience the Defect.

### 2. TSBs for Other Non-RAV4 Vehicles Equipped with the Same or Substantially Similar 8-Speed Transmission

41. As noted above, Toyota installed the same or substantially similar 8-speed direct shift transmission in other vehicles, including the 2017-2019 Highlander and the 2017-2019 Sienna, and the 2018-2019 Toyota Camry. The

1  troubled history of these vehicles further evidences Defendants' knowledge of the
2  Transmission Defect.

3      42.    Shortly after release of the 2017 model year Highlander and Sienna
4  vehicles in 2016, Consumer Reports tested them and noted that:

> The transmission made the engine rev before upshifting, especially
> from second to third gear, even under light acceleration. This delayed
> shifting increased engine noise and made driving rather unpleasant.[4]

8      43.    When Consumer Reports' staff members test drove the vehicles "they
9  routinely asked 'What's wrong with this transmission?'"  *Id*.  As a result, in
10 December of 2016 Consumer Reports shared its experience with Toyota.
11 According to Consumer Reports, "[t]he company re-evaluated the transmission
12 and agreed with our finding."  On March 2, 2017, Toyota issued a TSB titled
13 "Lack of Power/High RPM Shift Point/Hesitation" with a software update to
14 modify the PCM logic for the Highlander.  *See* T-SB-0194-17 attached as **Exhibit
15 2.**  A similar TSB titled "High RPM Shift Point" was issued on February 20, 2017
16 with a software update for the Sienna.  *See* T-SB-0187-17 attached as **Exhibit 3**.
17 Both bulletins noted that the vehicles may experience lack of power, a high RPM
18 shift point at the 2-3 shift, and hesitation.  Although Consumer Reports noted the
19 software update made a difference, it concluded "[u]nfortunately, we found that
20 shifting remains less smooth for both compared with the previous six-speed
21 automatic in pre-2017 models, even after the update."  On information and belief,
22 any improvement was inadequate and temporary at best, and these software
23 updates failed to resolve transmission issues which continue to plague both the
24 Highlander and Sienna.  Indeed, both vehicles have been the subject of additional
25 service bulletins regarding similar transmission issues (*e.g.*, harsh shifting,
26 reduced power, etc).

27

28 [4] *See* https://www.consumerreports.org/toyota/2017-toyota-highlander-sienna-transmissions-updated-to-shift-smoother/.

44.     The 2018 Camry was also the subject of service bulletins directed at transmission issues shortly after its release.  On December 11, 2017, Defendant issued T-SB No. 0330-17 titled "Shift Shock on Initial Startup or Reacceleration" applicable to 2018 Camrys.  A copy of T-SB No. 0330-17 is attached hereto as **Exhibit 4.**  This bulletin states in relevant part:

> Introduction
> Some 2018 model year Camry vehicles may exhibit a shift shock from Park to Reverse on initial startup or delay/shock when reaccelerating quickly after slowing down to a stop or near stop. The Engine Control Module (ECM) (SAE term: Powertrain Module [PCM]) logic has been updated to address this condition. Follow the Repair Procedure below to address this condition.

Both the symptoms described by this TSB, and the solution—reprogramming of the PCM—are indicative of faulty calibration of the PCM.  On information and belief, this TSB was narrowly crafted and limited to a subset of Class Vehicles to downplay the true nature and extent of the Transmission defect and limit Defendant's exposure.

45.     On February 2, 2018, Toyota released T-SB-0010-18 applicable to the 2018 Toyota Camry which acknowledges that mismatched PCM software and transaxle assembly combinations may result in a harsh shift or shift flare.  A copy of T-SB-0010-18 is attached hereto as **Exhibit 5.**  While this bulletin purports to provide a method for correctly matching the PCM and transaxle, on information and belief there are no PCMs for the Class Vehicles that are correctly calibrated for the Class Vehicles' transaxle assemblies.

46.     Like the RAV4 TSB, the above TSBs also failed to resolve the transmission issues experienced by the subject vehicles.  Further, because neither the RAV4 TSB nor any of the other TSBs were issued as part of a formal recall or

service campaign, they were more likely to be overlooked by dealers, and unknown to consumers.[5]

### C.   Example Consumer Complaints

47.   Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the Transmission Defect.

48.   Toyota monitors customers' complaints made to the NHTSA. Federal law requires automakers like Toyota to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

49.   Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Toyota knew or should have known of the many complaints about the 8AT Transmission Defect logged by NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Toyota to the 8AT Transmission Defect.

50.   The following example complaints filed by consumers with the NHTSA and other websites which continue to accrue and demonstrate that the Transmission Defect is a widespread, dangerous and unresolved problem:

---

[5] When a vehicle identification number is entered into a dealer computer, the dealer is automatically instructed to perform applicable recalls and service campaigns.   Dealers generally search for other TSBs based on customer complaints, which requires them to often sift through multiple TSBs and attempt to interpret which, if any, are applicable.

- <u>NHTSA ID No. 11054484 (December 13, 2017)</u>:  FROM A DEAD STOP WHEN ACCELERATING THE VEHICLE WILL NOT SPEED UP IT ACTS LIKE ITS IN 6TH GEAR. TO GAIN CONTROL I NEED TO PUSH THE ACCELERATOR TO THE FLOOR & THEN IT SPEEDS UP ALMOST UNCONTROLLABLY. THIS HAPPEN AT 12 TIMES. SEE MY COMMENT BELOW THAT I SENT TO TOYOTA CORPORATE OFFICE.

  I HAVE WANT I CONSIDER A SEVERE SAFETY ISSUE WITH MY 2018 RAV4 ([XXX]). UPON ACCELERATING FROM A STOP THE VEHICLE WILL NOT SPEEDUP IT ACTS LIKE IT IS IN 6TH GEAR TO GET IT GOING I HAVE PUT THE GAS PEDAL TO THE FLOOR AN THEN IT SOMETIME SHOOTS AHEAD ALMOST HITTING A VEHICLE IN FRONT OF ME. RECENTLY IT HAPPENED 3 TIMES IN A ROW TWICE I GOT IT TO RECOVER BUT THE THIRD TIME I NEEDED TO PULL OF THE HIGHWAY & RESTART THE ENGINE. THIS HAS HAPPEN AT LEAST 10 TIMES. PHILLIPS TOYOTA SERVICE SAID IT IS A FLY BY WIRE PROBLEM (COMPUTER CONTROLLED). MY FIRST VISIT PHILLIPS DID NOT EVEN WRITE A SERVICE REQUEST ON THE SECOND VISIT THEY DID, BUT ON 12/04/2017 THEY DID NOT AGAIN. THIS GOING TO CAUSE EITHER A REAR END OR FRONT ACCIDENT. WHEN ACCIDENTS HAPPEN LITIGATION USUALLY FOLLOWS. LETS GET THIS FIXED. PHILLIP TOYOTA SAID OTHER OWNERS HAVE HAD THIS SAME CONCERN. 12/04/201

- <u>NHTSA ID No. 11299733 (December 23, 2018)</u>:  I PURCHASED MY RAV4 BRAND NEW MID/LATE YEAR 2018. IN DECEMBER AT APP. 10000 MILES I STARTED HAVING ISSUES WITH THE GEARS. SHIFTING FROM PARK TO ANY GEAR I WOULD HEAR A LOUD BANGING TYPE NOISE AND THE ENTIRE CAR WOULD JERK. ALONG WITH THAT ISSUES I HAVE NOTICED A DELAYED ACCELERATION AT GREEN LIGHTS SOMETIMES TO THE POINT WHERE I GET A TRACTION CONTROL LIGHT ONCE IT HAS KICKED IN OR EVEN JERKING WHILE FINDING THE CORRECT GEAR TO BE IN. ONCE I HAVE ACCELERATED AND LET OFF THE GAS, AND THEN RETURNED TO THE ACCELERATION PEDAL AFTER BRAKING OR JUST MOMENTARILY RESTING MY ANKLE WITH THE CAR AT SPEED, THE CAR WILL "FISH FOR GEARS" LIKE IT CANNOT DECIDE WHICH GEAR THE CAR SHOULD BE IN. WHEN

GOING DOWNHILL AND LETTING OFF THE GAS IT WILL DOWNSHIFT, CAUSING THE CAR TO JERK. ALL THESE ISSUES HAPPEN OFTEN BUT COMPLETELY AT RANDOM. I HAVE TAKEN IT TO THE DEALER AND BROUGHT IT UP MULTIPLE TIMES DURING OIL CHANGES AND TIRE ROTATION, BUT THEY SAY THAT CANNOT DUPLICATE IT OR THAT IT IS JUST HOW THE CAR WORKS.

- NHTSA ID No. 11232077 (January 31, 2018):  SAME PROBLEM I HAD WITH THE 2014 RAV4 IS NOW HAPPENING WITH THE 2018 RAV4 STARTING FROM A STOP AT A TRAFFIC LIGHT OR MAKING A TURN THE CAR FAILS TO MOVE FOR MOMENT AS IF YOU DID NOT STEP ON THE GAS AND I AM NOW AFRAID TO MAKE TURNS UNLESS AT A TRAFFIC LIGHT.

- NHTSA ID No. 11316432 (January 16, 2020): I PURCHASED MY 2018 RAV4 IN NOVEMBER 2019. I HAD THE CAR FOR ABOUT 3 MONTHS WHEN I DROVE TO WORK, THE CAR ACTED SLUGGISH, WAS PRESSING ON THE GAS PEDAL BUT WASN'T GOING FASTER. THEN I HAD TO GO TO BANK, MY CAR WOULDN'T MOVE THE RPMS WENT UP TO 5 BUT CAR DIDNT MOVE, FINALLY CAR JUMPED SO I PRESSED ON GAS AN IT TRIED TO STALL SO I LET OFF, THEN CAR ACTED LIKE IT HAD POWER AGAIN THE CAR DID THIS ALL THE WAY TO BANK. IT SAT IDEAL WHILE I WAS AT THE BANK I NOTICED THE CAR SMELLED GASSY, THEN IT DID THE SAME ALL THE WAY BACK TO WORK. WHEN I GOT BACK TO WORK I CALL THE DEALERSHIP IN ENID WHERE I GOT IT AND HE EVEN SAID I MAY BE MY FUEL PUMP. LATER THAT DAY MY CAR SEEMED FINE. NOW IT FEELS LIKE IT WILL JUMP, SLUGGISH, OR STALLS LIKE IT DOESN'T GET GAS WHEN I HAVE A FULL TANK. I HAD GREAT GAS MILEAGE NOW IT TAKES 20 BUCK FOR 20 MILES NO JOKE. I CALLED THE TOYOTA DEALERSHIP IN AMARILLO TX 4 DAYS AGO ABOUT CHANGING MY PUMP, SO SHOWS I HAD ISSUES LONG BEFORE I GOT SENT THE RECALL MESSAGE FROM A FRIEND. I CALL TOYOTA DEALERSHIP IN ENID OK WHERE I GOT THE CAR AND HAVE PLANS TO TAKE IT IN ON THE 19TH TO BE LOOKED AT

- NHTSA ID No. 11218654 (December 20, 2018): VEHICLE WILL NOT ACCELERATE WHEN PUSHING DOWN ON THE GAS

PEDAL. THIS CAN OCCUR WHEN LEAVING A PARKING PLACE OR.

FROM A TRAFFIC LIGHT. THE ENGINE DOES NOT STOP RUNNING. IT HAS ONLY HAPPENED THREE TIMES, BUT COULD CAUSE AN ACCIDENT.

THE TOYOTA DEALER COULD NOT DUPLICATE THIS AT THE 5000 MILE INSPECTION AND THERE ARE NO CODES SET NOR DOES IT SET A CHECK ENGINE LIGHT WHEN IT HAPPENS

- NHTSA ID No. 11244389  (April 6, 2019): VEHICLE WILL CONDITION 1 : HEAVY THUMPING IN REAR DRIVELINE WHEN COMING TO A NEAR STOP, IN TRAFFIC OR PARKING CAUSING VEHICLE LURCH FORWARD, AS IF HIT FROM BEHIND FROM BEHIND? SUCH CAN BE HEARD AND FELT BY OCCUPANTS IN VEHICLE. CONDITION 2: WHEN COMING TO A NEAR STOP WHEN ACCELERATING BACK AGAIN VEHICLE DELAYS DOWN SHIFT CAUSING MOMENTARY HESITATION BEFORE RESPONDING DO TO LAPSE IN TRANSMISSION GEARING TO FIND PROPER GEAR RESPONCE WHICH LEAVES A SECOND OR TOO HESITATION UPON RE-ACCELERATION IN TRAFFIC CONDITION. CONDITION 1: ABOVE IS DUE TO UN-COUPLING AND COUPLING OR READ DRIVELINE WHEELS TO MAINLY MILEAGE RATING. WHICH CREATES A FEELING OF HEAVY WEAR AND TEAR TO PLACED UPON DRIVELING COMPONENTS. VEHICLES IN QUESTION GAS POWERED MODELS ONLY FOR FURTHER INFORMATION LOOK UPON TOYOTA DRIVERS FORUM AND EDMONTON'S CUSTOMER COMPLAINTS. CONDITION ON GOING, CONTACTED BOTH DEALER AND TOYOTA DIRECT, DEALER HAD NO IDEA WHAT I WAS TALKING ABOUT NOR DID TOYOTA, THIS CONDITION IS NOT ISOLATED TO MY CAR, THERE ARE MANY OF SAME ON SITES MENTIONED WITH SAME ISSUES

1.   TRANSMISSION SUDDEN JERKING/SHIFTING WHEN SLOWING DOWN IN CITY AT TRAFFIC LIGHTS THEN TRYING TO ACCELERATE ANYWHERE FROM 5-10 MPH WILL THEN JERK BACKWARDS THEN FORWARDS MAKING THE CAR

JUMP ABOUT 10 INCHES FORWARD. CAN BE REPLICATED AT ANY TIME.

2. CARS FRONT END SUSPENSION SEEMS TO SQUEAK/GROAN WILL PULLING INTO MY BANK OR DRIVE WAY, ALMOST ANY UNLEVELED PAVEMENT. THIS HAPPENS AT LOWER SPEEDS WHEN I CAN HEAR IT WITH VERY LITTLE WIND NOISE.

3. MY SEAT IN THE VEHICLE BROKE AT 7,000 MILES.

4. MY BRAKES SOUND AS IF THE ROTORS ARE BENT WITH SLIGHT VIBRATION IN THE BRAKE PEDAL.

5. NO FIX FOR TRANSMISSION. TODAY THEY ARE REFLASHING THE PCM - POWERTRAIN CONTROL MODULE. WE'LL SEE IF THAT WILL FIX THE ISSUE BUT I HIGHLY DOUBT IT FROM THE DAMAGE THAT HAS ALREADY OCCURRED.

I AM WORKING WITH TOYOTA CORPORATE WITH THE ISSUE.

- NHTSA ID No. 11245080  (June 1, 2019): AT THIS TIME THERE AT LEAST 24 COMPLAINT ABOUT A "LURCHING" PROBLEM AT LOW SPEED AND RE ACCELERATION. A VERY SIGNIFICANT "LURCHING" ALMOST"STALLING" IS VERY APPARENT AS THE COMPLAINTS INDICATE. IN ADDITION, THE TRANSMISSION STARTS IN 4TH GEAR...NOT 1ST GEAR FROM A DEAD STOP. I WOULD CONSIDER THIS A SAFETY ISSUE. HAS BEEN AN ISSUE FROM DAY 1 OF CAR PURCHASE. VEHICLE NOW HAS 5600 MILES ON IT.

- NHTSA ID No. 11254351 (September 9, 2019): 19 RAV4 XLE AWD TRANSMISSION ISSUE AND POWER TRAIN. MY VEHICLE HAS DRIVEN UNDER 5K MILES AND I NOTICED TWO MAJOR PROBLEMS. FIRST, RPM MOVES UP AND DOWN WHEN I SLOW DOWN THE VEHICLE. I DON'T SEE RPM SHIFTS WHEN I REDUCE THE SPEED IN RANGE OF 10MPH BUT I SEE RPM MOVES UP AND DOWN WHEN THE REDUCTION BECOMES GREATER LIKE 15 AND 20 MPH. FURTHERMORE, THERE IS A HESITATION AND LURCHES. ONCE THE VEHICLE'S SPEED IS

REDUCED UPTO EITHER 4 MPH OR 5 MPH AND TRY TO SPEED UP, I CAN TELL IT HESITATES AND LURCHES. AS A RESULT, I WITNESSED RPM JUMPS HIGH ALL OF SUDDEN. THE VEHICLE HAD SOFTWARE UPDATE ON 9/9/2019 AND I TOOK VIDEO RECORD AND POSTED ON YOUTUBE.

HTTPS://WWW.YOUTUBE.COM/WATCH?V=FRUVFZAUPTQ&T=11S

- <u>NHTSA ID No. 11266718 September 26, 2019)</u>: WHEN TEST DRIVING VEHICLE FELT LIKE TRANSMISSION WAS NOT SHIFTING PROPERLY

BUT NOT BEING A MECHANIC THOUGHT IT WAS JUST MY IMAGINATION. THEY WOULD NOT PUT A DEFECTIVE CAR ON THE LOT FOR SALE RIGHT? WRONG!!!! WHEN I DROVE IT AFTER GOT IT HOME IT WAS OBVIOUS THERE WAS A BIG PROBLEM. EVERY TIME I STOPPED AT A LIGHT THEN TOOK FOOT OFF OF BRAKE TO ACCELERATE CAR WOULD LURCH, SHAKE, SHUDDER BEFORE I EVEN GOT MY FOOT ON ACCELERATOR. THOUGHT IS WAS GOING TO DIE. WOULD HESITATE WHEN TRYING TO ACCELERATE WHEN PUT IT IN PARK TO TURN OFF ENGINE SAME LURCH SHAKE SHUDDER AND SOUNDS LIKE ENGINE DIED.

CAR HAS 61 MILES ON IT. WAS DEFECTIVE WHEN SHIPPED FROM FACTORY TOOK IT BACK TO DEALER, SAID THERE ARE TONS OF COMPLAINTS ABOUT THIS SAME ISSUE. TOYOTA AWARE BUT HAS NO FIX IN PLACE. DEALER CLAIMS NOTHING THEY CAN DO BUT WAIT ON TOYOTA. SO NOW I HAVE A BRAND NEW CAR THAT I HAVE TO CONTINUE MAKING PAYMENTS ON WHILE TOYOTA CONTINUES BUSINESS AS USUAL AND MY CAR SITS IN THE GARAGE, AFRAID TO DRIVE IT.

- <u>NHTSA ID No. 11277130 (September 2, 2019)</u>: THE TRANSMISSION IS VERY JERKY. IT SEEMS TO START IN 4TH GEAR AND IF I HAVE TO SPEED UP IN AN INTERSECTION, IT DOWNSHIFTS VIOLENTLY AND CAUSES A LOT OF JERKING WHILE DRIVING. NOT A GREAT EXPERIENCE AND WORRIED ABOUT THE LIFE OF THE TRANSMISSION.VEHICLE HAS 4200 MILES ON IT.

- <u>NHTSA ID No. 11277809 (November 1, 2019)</u>: TRANS MISSION JERKS HARD AFTER I COME TO A COMPLETE STOP AND DRIVE AGAIN.

- <u>NHTSA ID No. 11282328 (February 1, 2019)</u>: A VERY SIGNIFICANT "LURCHING" ALMOST"STALLING" IS VERY APPARENT AS THE COMPLAINTS INDICATE. IN ADDITION, THE TRANSMISSION STARTS IN 4TH GEAR...NOT 1ST GEAR FROM A DEAD STOP. I WOULD CONSIDER THIS A SAFETY ISSUE. HAS BEEN AN ISSUE FROM DAY 1 OF CAR PURCHASE. VEHICLE NOW HAS 22,000 MILES ON IT

- <u>NHTSA ID No. 11288863 (April 1, 2019)</u>: I LEASED A NEW 2019 TOYOTA RAV4 XLE IN APRIL AND SINCE THAT DAY HAVE HAD ISSUES. IF YOU ARE STOPPING AND THEN GO TO PUSH THE GAS AGAIN, YOU WILL LURCH FORWARD. ALSO IF YOU EASE OFF THE BREAK, IT WILL ROCK BACK AND FORTH. I DESCRIBE IT LIKE TRYING TO DRIVE A STICK SHIFT WHEN YOU DON'T KNOW HOW TO USE THE CLUTCH. ALSO IF YOU STOP AND GO TO TURN INTO TRAFFIC OR LEFT ACROSS AN INTERSECTION, IT WILL DELAY AND NOT GO FAST ENOUGH AND THEN YOU PUSH HARDER AND IT ROCKETS FORWARD. I HAVE EXPERIENCED 3 NEAR ACCIDENT SITUATIONS DUE TO THIS DELAY. I CALLED MY DEALERSHIP ABOUT THE ISSUE AND THEY SAID THEY DIDN'T KNOW ANYTHING ABOUT IT. I SPOKE TO THE CUSTOMER RELATIONS MANAGER AND HE SAID THE CAR NEEDS TO LEARN MY DRIVING HABITS, IT COULD TAKE UP TO 10K MILES, AND THAT IT'S NORMAL. I TOLD HIM I WASN'T HAPPY AND WANTED OUT OF THE VEHICLE AS IT'S A SAFETY ISSUE, UNCOMFORTABLE, AND KIND OF SCARY. HE TOLD ME I SIGNED A CONTRACT AND THERE WASN'T ANYTHING THEY COULD DO. I CALLED AND INFORMED TOYOTA CORPORATE. I BROUGHT THE CAR IN FOR A FULL DIAGNOSIS IN JUNE. THEY SAID EVERYTHING WAS NORMAL. I BROUGHT IT IN AGAIN IN OCTOBER. THEY DID THE SOFTWARE UPDATE. THE CAR DROVE BETTER FOR ABOUT 3-4 WEEKS AND STARTED UP AGAIN. I CALLED AND SCHEDULED TO BRING IT IN NOVEMBER. THEY SAID THE SOFTWARE UPDATE HADN'T TAKEN FULLY AND NEEDED TO BE RE-RUN. I LEFT AND STILL HAD THE ISSUE. I CALLED

TOYOTA CORPORATE AGAIN AND STARTED THE PROCESS FOR LEMON LAW AND THE HAD MY CAR FOR 3 DAYS. THEY COULD NOT GET THE CAR TO RE-CREATE THE ISSUES AND SO THEREFORE THERE IS NOTHING THEY CAN DO AND THEY WILL NOT BE SENDING OUT THE CORPORATE MASTER TECHNICIAN. THEY SAID THE 1-2 SECOND DELAYS ARE NORMAL FOR THE COMPUTER WHILE IT TRIES TO DETERMINE IF IT SHOULD SHIFT UP OR DOWN.

- <u>NHTSA ID No. 11308296 (January 31, 2019)</u>: 2019 RAV 4 XLE PREMIUM I PURCHASED A YEAR AGO CONTINUES TO LURCH WHEN SUDDENLY ACCELERATING FROM A ROLLING STOP. AN EXAMPLE IS WHEN PULLING UP TO A RED LIGHT AND THE LIGHT SUDDENLY TURNS GREEN, I'LL TAKE MY FOOT OF THE BRAKE AND TAP THE GAS AND THE CAR HESITATES THEN ACCELERATES. THIS MOTION JERKS ME AND OTHER PASSENGERS IN OUR SEATS.

- <u>NHTSA ID No. 11309396 (February 15, 2020)</u>: MY 2019 TORTOLA RAV4 XLE WITH 6401 MILES ON IT HAS BEEN EXPERIENCING PROBLEMS WITH STALLING SINCE I FIRST GOT IT IN AUGUST. I NOTICE IT ESPECIALLY WHEN I DON'T MAKE COMPLETE STOPS. IT WILL STALL AND YANK THE CAR FORWARD. IT IS ANNOYING AND EMBARRASSING THAT MY NEW CAR DOES NOT DRIVE SMOOTH. I WILL BE TAKING IT TO A TOYOTA DEALERSHIPS

TO GET EVALUATED.

- <u>NHTSA ID No. 11311751 (November 1, 2020)</u>: 1ST INCIDENT: SITTING AT STOP LIGHT FOR A FEW MINS AS NORMAL. WHEN TIME TO ACCELERATE, THE VEHICLE STARTED LURCHING FORWARD IN A HARD JERKING MOTION.

2ND INCIDENT: SLOWER TRAFFIC. WHEN DRIVING IN SLOWER TRAFFIC OR AT SLOWER SPEEDS, ~20-35MPH THE VEHICLE WILL START LURCHING JERKING FORWARD.

TOOK BACK TO DEALERSHIP FOR INSPECTION, THERE WERE NO ISSUES FOUND.

CLASS ACTION COMPLAINT

DEALERSHIP RESET INTERNAL COMPUTER, STATING THAT "VEHICLE IS OPERATING NORMALLY".

NEITHER HAS ISSUE HAS YET TO CAUSE AN ACCIDENT WITH ANY OTHER DRIVERS AT THIS TIME. I DO TRAVEL WITH DOGS WHO ARE HARNESSED AND SEAT-BELTED IN THE BACKSEAT, THEY WOULD HAVE BEEN THROWN TO FLOOR OF CAR IF NOT SEAT-BELTED. FOR MYSELF, I GET TOSSED FORWARD SEVERAL INCHES AND HEAD THROWN FORWARD.

WHEN DRIVING IN SLOWER TRAFFIC AND/OR STOP AND GO TRAFFIC, THE CAR LURCHING/HARD JERKING FORWARD WILL EVENTUALLY CAUSE AN ACCIDENT. ALL INCIDENTS HAVE HAPPEN ON DRY CITY STREETS. I WOULD ASSUME DURING THESE INCIDENTS OF THE JERKING FORWARD THAT THE BREAK LIGHTS DO NOT ALERT REAR DRIVERS THAT THE CAR IS IN A STOP/GO MOTION.

- NHTSA ID No. 11316526 (February 29, 2020): TWICE THIS VEHICLE HAS STUMBLED WHEN TRYING TO MAKE A LEFT TURN ACROSS TRAFFIC, APPLYING GAS FROM A NEAR DEAD STOP. BOTH TIMES WOULD HAVE BEEN AN ACCIDENT IF OTHER DRIVER WAS NOT DRIVING DEFENSIVELY. THIS RAV 4 IS UNSAFE! LESS THAN 5,000 MILES SINCE WE BOUGHT IT NEW.

- Carcomplaints.com (August 26, 2019): I'm no car genius, but my brand new 2019 RAV 4 I got in August is having transmission problems at lower speeds. It's a lease that I was thinking I might buy at the end of the term and now I'm hesitant because I'm afraid this will cause excessive wear and tear. I noticed when I give it a little gas and maybe take my foot off the gas pedal for it to "roll" and then reapply the gas it jerks really hard. I thought maybe it was just that motion but it happens a lot more than just in that scenario. Seems to be having more problems with transmission than my 2008 Honda Odyssey...

If Toyota doesn't address this I'll be taking my business elsewhere, if they do I'll probably end up buying the Rav4 as planned

You buy a Toyota for the reliability, I'm not angry but please just fix it..

CLASS ACTION COMPLAINT

- <u>Carcomplaints.com (June 1, 2019)</u>: At low speeds, the car lurches and kicks forward with a whiplash effect when re-accelerating, unless the car has come to a complete stop for full 2 seconds. It almost feels like the car doesn't shift into first gear until you press the acceleration, at which point you get sent forward by half a metre. Dangerous at times and almost caused an accident yesterday when i lightly tapped acceleration to reach the stop sign line.

  Similar to this is how when braking, the car hesitates until it comes to a complete stop. Almost like it needs to slow down in sequences.

  I'm so disappointed, I don't know where to begin. Complaint sent to Toyota Woodland. Let's see how this goes. Will update.

- <u>Carcomplaints.com (April 10, 2019)</u>: We have this shutter, slip, hesitation in speeding up when at a slow or stopped forward momentum. I did have the dealership look at and at that time, was able to see this issue during its first check up. They started this was nothing they were able to change and that it was fine as is. I made sure they documented it and confirmed that I was updated with any changes. That was about 3 months ago and we are still having this issue and it seems to becoming more of an pain to deal with

- <u>Carcomplaints.com (April 27, 2019)</u>: Same as all complaints on here about low speed or rolling stops with car jerking & noise. No problems when normal drive but slow to a stop or under 5mph & give gas car jerks forward almost like everything shuts down for second then boom power back on. Dealer is trying to find solution but i think factory is giving them the run around. I agree with class action lawsuit get this crap fixed before someone gets killed.

- <u>Carcomplaints.com (April 1, 2019)</u>: The new 2019 Toyota Rav 4 is full of problems. I am in the midst of addressing the problems with my dealer Copeland Toyota. As with all of the complaints below, mine is the same regarding slow acceleration to a point that this car is a safety hazard. At a stop sign or traffic light, when putting foot on gas pedal, there is a noticeably concerning delay and almost a kick back of the car, and at times it feels like it is going even stall out. When on the highway, it is a big safety concern. I've experienced it when changing lanes and someone is driving closely behind me. When accelerating to move over,

the vehicle does the opposite and kicks back which has caused me to be in a near accident situation. Toyota must address these issues.

- Carcomplaints.com (August 19, 2019): Brought my RAV into the dealership today, 8/19 for issue of lurching at low speed and low gear shift. Toyota released a TSB, Toyota Service Bulletin, (similar to a recall) and fixed it under an hour for me for free. Toyota is aware and fixed the issue. I enjoyed my drive home and had no hesitation!

- Carcomplaints.com (June 28, 2019): I bought my 2019 Toyota Rav 4 approx. 3 months ago. At the end of June, I started noticing that i when WAS TRAVELING AT LOW SPEED and applying the brakes, the car would suddenly Lunge forward as if I were accelerating. The problem persisted, so i went in to the Service Department at my Toyota dealership, Headquarter Toyota in Miami, Fl. where one of the mechanics advised me that this was NORMAL!!!! i am really dissatisfied with my experience with this vehicle so far!

- Carcomplaints.com (May 25, 2019): I PURCHASED MY NEW 2019 TOYOTA RAV4 BACK IN MAY AND STARTED NOTICING A FEW WEEKS LATER JERKING AND LAUNCHING AT LOW SPEEDS. OR, WHEN COMING TO A STOP I WOULD FEEL THE CAR VIBRATE AND HEAR A KNOCKING SOUND. I DON'T FEEL A 100% CONFIDENT DRIVING THIS CAR. ALSO FEELING DISAPPOINTED SINCE ITS MY FIRST TOYOTA AND I'VE HEARD NOTHING BUT GOOD THINGS, SOME EVEN CALL THEM BULLET PROOF. BUT I FEEL THAT THE QUALITY IN THE BRAND IS GOING DOWN. I HOPE TOYOTA CAN FIND A FIX FOR THIS ISSUE.

- NHTSA ID No. 11309701 (January 6, 2020): I HAVE THE RAV4 LE BASE MODEL. IN THE FIRST 3 GEARS, TRANSMISSION JERKS A LOT DURING ACCELERATION, ALWAYS FEELING IT IS HAVING A HARD SHIFT. WHEN I PRESSED THE BRAKE PADEL PARTIALLY OR ROLLING STOP, THE CAR LURCHES, THIS IS PARTICULARLY DANGEROUS WHEN I MAKE TURNS, I FEEL THE CAR IS NOT STABLE. VERY DISAPPOINTED AT TOYOTA.

51.    Although Toyota was aware of the widespread nature of the Transmission Defect in the Class Vehicles, and that it posed grave safety risks,

Toyota has failed to take adequate steps to notify Class Vehicle owners and lessees of the Defect and provide relief.

52.    Customers have reported the Transmission Defect in the Class Vehicles to Toyota directly and through its dealers.  Defendants are fully aware of the Transmission Defect contained in the Class Vehicles.  Nevertheless, Defendants actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Defendant:

a.    failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Transmission Defect;

b.    failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their transmissions were not in good working order, were defective, and were not fit for their intended purpose; and

c.    failed to disclose and/or actively concealed the fact that the Class Vehicles and their transmissions were defective, despite the fact that Defendant learned of the Transmission Defect before it placed the Class Vehicles in the stream of commerce.

53.    Defendants have deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Transmission Defect contained in the Class Vehicles.  Moreover, on information and belief when vehicles are brought to Defendant's dealers for repair, Class Members are provided with ineffective repairs in which one defective component is replaced with another.  As a result,

Class Members continue to experience the Transmission Defect even after paying for repairs, as shown by the experiences of Plaintiffs.

54.    Defendants have not recalled the Class Vehicles to repair the Transmission Defect, have not offered to its customers a suitable repair or replacement of parts related to the Transmission Defect free of charge, and have not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Transmission Defect.

55.    Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

56.    As a result of the Transmission Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.    Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's transmission and the related components are not defective and will not malfunction while operating the vehicle as it is intended.    Plaintiffs and Class Members further expect and assume that Toyota will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair.

57.    On information and belief, the Class Vehicles do not function as Toyota intended; no manufacturer intends for a vehicle to experience rough or delayed shifting, significantly delayed acceleration, hesitation, loss of power and/or jerking in a manner that places the vehicle in harm's way.

## VI.    CLASS ACTION ALLEGATIONS

58.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class and Sub-Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).    This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

CLASS ACTION COMPLAINT

59.     The Classes and Sub-Classes are defined as:

**Nationwide Class**: All persons who purchased or leased any 2018 through 2020 Toyota Rav4 vehicle in the United States.

**New York Sub-Class:** All persons who purchased or leased a 2018 through 2020 Toyota Rav4 vehicle in State of New York.

**Texas Sub-Class:** All persons who purchased or leased a 2018 through 2020 Toyota Rav4 vehicle in the State of Texas.

60.     Excluded from the Classes and Sub-Classes are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve their rights to amend the definition of the Classes and Sub-Classes, and to add further subclasses, if discovery and further investigation reveal that the Classes and Sub-Classes should be expanded or otherwise modified.

61.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from, *inter alia*, information and records in Defendants' possession, custody, or control.

62.     Typicality: The claims of the representative Plaintiffs are typical of the claims of the Classes and Sub-Classes in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendants which is subject to the Transmission Defect.  The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of

repairing or replacing their malfunctioning transmission and related parts as a result of the Transmission Defect.  Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

63.   <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and the Class and Sub-Classes that predominate over any question affecting only individual Class Members.   These common legal and factual questions include the following:

    a.    whether the Class Vehicles suffer from the Transmission Defect;

    b.    whether the Transmission Defect constitutes an unreasonable safety hazard;

    c.    whether Defendants know about the Transmission Defect and, if so, how long Defendants have known of the Defect;

    d.    whether the defective nature of the Class Vehicles' transmissions constitutes a material fact;

    e.    whether Defendants had and have a duty to disclose the defective nature of the Class Vehicles' transmissions to Plaintiffs and the other Class Members;

    f.    whether Defendant knew or reasonably should have known of the Transmission Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

    g.    Whether Defendants: (1) violated New York General Business Law §§ 349, 350, *et seq;* (2) breached the implied warranty of merchantability, N.Y. U.C.C. § 2-314; (3)   breached the implied warranty of merchantability, Tex. Bus. & Com. Code § 2.314; (4) breached the implied warranties pursuant to the

Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.; (5) is liable for fraudulent omission; and (6) was unjustly enriched.

64.    <u>Adequate Representation</u>:    Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and automobile defect class actions, and Plaintiffs intend to prosecute this action vigorously.

65.    <u>Predominance and Superiority</u>:    Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## **FIRST CAUSE OF ACTION**

(Violation of New York General Business Law ("GBL") §§ 349, 350, *et seq*. on behalf of the Nationwide Class and, in the alternative, the New York Sub-Class)

66.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

67.   Plaintiff Natasha Peguero brings this cause of action on behalf of herself and on behalf of the Nationwide Class and, in the alternative, the New York Sub-Class.

68.   Plaintiff and Class Members are "persons" within the meaning of N.Y. GBL § 349(h).

69.   The N.Y. GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  Defendants' conduct, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL § 349.  Furthermore, Defendants' deceptive acts and practices, which were intended to mislead consumers who were in the process of purchasing and/or leasing the Defective Vehicles, was conduct directed at consumers.

70.   Defendants knew that the Class Vehicles' transmissions suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

71.   In failing to disclose the Transmission Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in deceptive acts or practices within the meaning of the N.Y. GBL § 349.

72.   Defendants were under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' transmissions because:

73.   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

74.   Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' transmissions; and

75.    Defendant actively concealed the defective nature of the Class Vehicles' transmission from Plaintiffs and Class Members at the time of sale and thereafter.

76.    The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them.  Had Plaintiff and other Class Members known that the Class Vehicles suffered from the transmission Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

77.    Defendants continued to conceal the defective nature of the Class Vehicles and their transmission even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of this systematic problem today.

78.    Plaintiff also asserts a violation of public policy arising from Defendants' withholding of material safety facts from consumers.  Defendants' violation of consumer protection and unfair competition laws resulted in harm to consumers.

79.    Defendants' omissions of material facts, as set forth herein, also constitute deceptive acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

80.    Thus, by its conduct, Defendants have engaged in deceptive acts or practices within the meaning of the N.Y. GBL § 349.

81.    Defendants' deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

82.    As a direct and proximate result of Defendants' deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

83.    Since Defendants' willful and knowing conduct caused injury to Plaintiff, Plaintiff seeks recovery actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, and any other just and proper relief available under N.Y. GBL § 349.

## SECOND CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability, N.Y. U.C.C. § 2-314, on behalf of the Nationwide Class and, in the alternative, the New York Sub-Class)

84.    Plaintiff incorporates by reference the allegations contained in the preceding sections of the complaint.

85.    Plaintiff Natasha Peguero brings this Count on behalf of her herself and the Nationwide Class and, in the alternative, the New York Sub-Class.

86.    Toyota impliedly warranted that the Class Vehicles were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings.

87.    Privity of contract is not required in this case, because Plaintiff and Class Members are intended third-party beneficiaries of contracts between Toyota and its dealerships; specifically, they are the intended beneficiaries of Defendants' implied warranties. Toyota's vehicles are sold to consumers through a network of Toyota's authorized dealerships, who are Toyota's agents for sales and repairs. The dealers were not intended to be the ultimate consumers of the Class Vehicles, and the warranty agreements were designed for and intended to benefit the ultimate consumers only.

88.     Contrary to the applicable implied warranties, the Class Vehicles' transmissions, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, as described more fully. Toyota breached the implied warranty of merchantability by selling or leasing the Class Vehicles to Plaintiff and Class Members.

89.     Plaintiff and Class Members compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and any other relief to which she and Class Members are entitled.

### THIRD CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability, Tex. Bus. & Com. Code § 2.314, on behalf of the Nationwide Class and, in the alternative, the Texas Sub Class)

90.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

91.     Plaintiff Zulema Chapa brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the Texas Sub-Class.

92.     Defendants are merchants with respect to motor vehicles.

93.     Defendants provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles' transmission designed, manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' transmission  would be fit for their intended use while the Class Vehicles were being operated.

94.     Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended

purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, as described more fully above

95.    Defendants were on notice of the Transmission Defect as discussed more fully above.

96.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.[6]

**FOURTH CAUSE OF ACTION**

(Breach of Implied Warranties Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, on behalf of the Nationwide Class and, in the alternative the New York and Texas Sub-Classes)

97.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

98.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the New York and Texas Sub-Classes.

99.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

100.    Defendants are a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

101.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

102.    Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

---

[6] Defendants' conduct also constitutes a violation of the Texas Deceptive Trade Practices Act ("TDTPA"). Plaintiff sent Defendants notice of their violation of the TDTPA on June 4, 2020. Plaintiff will amend this complaint to seek damages under the TDTPA once the requisite sixty-day notice period has passed.

103.   Defendants breached the implied warranty by virtue of the above-described acts.

104.   Plaintiffs and the other Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so.  Defendants were also on notice of the Transmission Defect from, among other sources, the complaints and service requests it received from Class Members and its dealers.

105.   Defendants' breach of the implied warranties deprived Plaintiffs and Class Members of the benefits of their bargains.

106.   As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Plaintiffs and Class Members are entitled to legal relief against Defendant, including actual damages, attorneys' fees, costs of suit, and other relief as appropriate.

## FIFTH CAUSE OF ACTION

(Fraudulent Omission behalf of the Nationwide Class, or in the alternative, the New York and Texas Sub-Classes)

107.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

108.   Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or in the alternative, the New York and Texas Sub-Classes.

109.   Defendants knew that the Class Vehicles' suffered from an inherent defect, were defectively designed and/or manufactured and were not suitable for their intended use.

110.   Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their transmissions.

111.   Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' transmissions because:

a. Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their transmissions have a dangerous safety defect until after they purchased or leased the Class Vehicles;

c. Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Transmission Defect prior to purchase or lease; and

d. Defendants actively concealed the defective nature of the Class Vehicles' transmissions from Plaintiffs and Class Members at the time of sale and thereafter.

112. The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' transmissions, they would not have purchased or leased them, or would have paid less for them.

113. Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' transmissions in order to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment. This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendants' defective Class Vehicles.

114. Defendants continued to conceal the defective nature of the Class Vehicles' transmissions even after Class Members began to report the problems.

CLASS ACTION COMPLAINT

Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

115. As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

## SIXTH CAUSE OF ACTION

(Unjust Enrichment on behalf of the Nationwide Class, or
in the alternative, New York and Texas Sub-Classes)

116. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

117. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or in the alternative, the New York and Texas Sub-Classes.

118. As a direct and proximate result of Defendants' failure to disclose known defects, Defendants have profited through the sale and lease of the Class Vehicles. Although these vehicles are purchased through Defendants' agents, the money from the vehicle sales flows directly back to Defendants.

119. Additionally, as a direct and proximate result of Defendants failure to disclose the Transmission Defect in the Class Vehicles, Plaintiffs and Class Members have vehicles that require repeated, high-cost repairs or replacement vehicles that can and therefore have conferred an unjust substantial benefit upon Defendants.

120. Defendants have been unjustly enriched due to the known Transmission Defect in the Class Vehicles through the use of money paid that earned interest or otherwise added to Defendants profits when said money should have remained with Plaintiffs and Class Members.

121. As a result of Defendants' unjust enrichment, Plaintiffs and Class Members have suffered damages.

## **RELIEF REQUESTED**

122.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, and issue an order providing the following relief:

a.   That Defendants offer to reimburse all current and former owners and lessees in the United States who have purchased or leased Class Vehicles, all expenses already incurred as a result of the Transmission Defect, including repairs, diagnostics, and any other consequential and incidental damages including but not limited to diminution in value, towing charges, vehicle rentals, etc.;

b.   An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representative of the Class and Sub-Classes, and designating the undersigned as Class Counsel;

c.   A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles' transmissions;

d.   Any and all appropriate remedies provided pursuant to the FDUPTA, the GBL, and the implied warranty laws alleged herein, and common law fraud laws;

e.   An award to Plaintiffs and the Class and Sub-Classes of actual damages, punitive damages, statutory damages and any other damages to which Plaintiffs and the Class and Sub-Classes are entitled, as applicable, including interest, in an amount to be proven at trial;

f.   An award of attorneys' fees and costs, as allowed by law;

g.    An award of pre-judgment and post-judgment interest, as provided by law;

h.    Leave to amend the Complaint to conform to the evidence produced at trial; and

i.    Such other relief as may be appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated:  June 30, 2020                      **CAPSTONE LAW APC**

                                           By: */s/ Cody R. Padgett*
                                           Steven R. Weinmann
                                           Tarek H. Zohdy
                                           Cody R. Padgett
                                           Trisha K. Monesi
                                           1875 Century Park East, Suite 1000
                                           Los Angeles, CA 90067
                                           Telephone: 310-566-4811


                                           **GREENSTONE LAW APC**

                                           By:  *s/ Mark S. Greenstone*
                                           Mark S. Greenstone
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, California 90067
                                           Telephone: (310) 201-9156
                                           Facsimile: (310) 201-9160
                                           Email: mgreenstone@greenstonelaw.com


                                           **GLANCY PRONGAY & MURRAY LLP**
                                           Lionel Z. Glancy
                                           Marc L. Godino
                                           Danielle L. Manning
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, California 90067
                                           Telephone: (310) 201-9150
                                           Facsimile: (310) 201-9160
                                           Email: mgodino@glancylaw.com
                                           Email: dmanning@glancylaw.com

**BERGER MONTAGUE P.C.**
Russell D. Paul (*Pro Hac Vice App. Forthcoming*)
Amey J. Park (*Pro Hac Vice App. Forthcoming*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
Email: rpaul@bm.net

CLASS ACTION COMPLAINT